UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    -vs-                                                Case No. 19-CR-54

ALISSA WAUPOOSE,

    Defendant.

## DEFENDANT'S SENTENCING MEMORANDUM

The Defendant, Alissa Waupoose, by her attorney, Thomas J. Erickson, pursuant to the Due Process provisions of the Fifth Amendment to the United States Constitution as well as Rule 32(c) of the Federal Rules of Criminal Procedure, respectfully submits the following Sentencing Memorandum which requests a downward departure from the sentencing guidelines based on an analysis of factors set forth in 18 U.S.S.G. s. 3553(a).

It is expected that the pre-sentence report will conclude, upon application of the 2018 Sentencing Guidelines Manual, the Defendant is in a guideline imprisonment range of 6 to 12 months based on an offense level of 10 and a criminal history category I.[1] Pursuant to USSG Sec. 5C1.1(d)(1) and (2), the minimum term of imprisonment may be satisfied by a sentence which includes a term of supervised release with a condition that substitutes home detention for imprisonment. Pursuant to the plea agreement, the

---

[1] The Plea Agreement contemplates a base offense level of 6 which would render a guideline range of 0 to 6 months based on USSG Sec. 2D1.1(c)(14). It appears that the government's analysis is the correct one because the minimum offense level is 12 if the substance is an opiate pursuant to USSG Sec. 2D1.1. (see Drug Quantity Table).

1

government is recommending a sentence of 60 months imprisonment. Based on the nature of the offense and the Defendant's conduct in relation to the guideline, the mitigating circumstances of the Defendant's personal characteristics, and the Defendant's exemplary behavior over the last several months, a sentence of six months home confinement with three years of supervised release is requested by the defense. The Defendant has already served 38 days in jail.

## I. SENTENCING METHODOLOGY

Post-*Booker*, a court may impose a sentence with the applicable guideline range, or impose a non-guideline sentence if it is justified by. 3553(a) factors. *See United States v. Crosby*, No 03-1675, 2005 U.S. App. LEXIS 1699 at 25 (2d Cir. Feb 2, 2005).

Title 18 U.S.C. s. 3553(a) requires the court to consider seven factors:

1. The nature and circumstances of the offense and history of characteristics of the defendant;

2. The need for the sentence imposed

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. The kinds of sentences available;

4. The sentencing range established by the guidelines;

5. Any pertinent policy statements issued by the Sentencing Commission;

6. The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

7. The need to provide restitution to the victims of the offense.

After considering all of these factors, a court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." *United States v. Galvez-Barrios*, No. 04-CR-14, 2005 U.S. Dist. LEXIS 1997, at *16-17 (E.D. Wis. Feb. 2, 2005).

In *Gall v. United States*, 552 U.S.-, 2007 WL 4292116 (Dec. 10, 2007), the Supreme Court rejected an appellate rule that requires "extraordinary" circumstances to justify a sentence outside the Guidelines range. The Court made it clear that as long as the record demonstrates that a district court has considered the s. 3553(a) factors and supported its sentence with a rationale that is supported by the record, the sentence shall stand.

## II. SENTENCING ANALYSIS

The s. 3553(a) factors can be grouped into three general categories: the nature of the offense, the character of the defendant, and the needs of the public and victims of the offense.

**The Nature of the Offense**

The prosecution of the Defendant and co-defendants Ronald Frechette and his wife Kelly Nacotee stemmed from an investigation into the death of Scott Perez in 2016 on the Menominee Indian Reservation. The Defendant was eventually charged in May, 2019, with Distribution of Furanyl Fentanyl and Second Degree Murder. The Defendant now stands convicted after pleading guilty to a one count Information of Distribution of a

3

Schedule II Controlled Substance.  She admitted to delivering one pill, which she believed to be Percocet, to Scott Perez on September 12, 2016.  The drastic reduction in charges reflects the reality of the evidence against the Defendant; the government's recommendation of 60 months imprisonment for a case with a guideline of 6 to 12 months reflects the government's unreasonable desire to have its cake and eat it too.

There is a false narrative in this case that is seemingly at the heart of the government's sentencing position:  It's unprovable beyond-a-reasonable-doubt belief that the Defendant was a party to the delivery of the fatal pill to Scott Perez.  The government's theory rests on the unreliable shoulders of Ron Frechette who has consistently lied about his actions on the night of September 12, 2016.

The government's original theory, which it apparently is clinging to, is that the Defendant provided the fatal pill to Frechette who then delivered it to Perez.  For his efforts, Frechette would get a pill himself from the Defendant.  Aside from the faulty logic, it is just not true.

First, Frechette had his own stash of pills and was selling them on the night of September 12th.  According to a CI's statement in discovery, she states that she bought three "blues" (30 mg Percocet pills) from Kelly Nacotee, Frechette's long-time companion and live-in girlfriend, on the night Scott Perez died.  She tried smoking one of the pills but could tell they were fake.  She called Nacotee to complain and Nacotee acknowledged there was a problem with the pills.  Within a couple of hours after Perez died, Nacotee called the CI and wanted the pills back.  Ron Frechette's daughter, Kaylene Frechette, then came over (which must have been around 3 AM) to get the pills.  Kaylene, certainly at the behest of her father, told the CI to not tell anyone about the pills.

4

Based on the CI's statements, it is as clear as crystal that Frechette was dealing from his own stash of ersatz Percocets. Further evidence pointing to Frechette as both the source and deliverer of the fatal pill, is his actions immediately after he became aware of the death of Scott Perez when he told Ms. Nacotee to erase all the messages from Mr. Perez "asking for stuff" from the cell phone Frechette was using to communicate with Perez.[2] These are not Perez's messages with the Defendant; they are the incriminating and direct messages between Perez and Frechette in the minutes leading up to Frechette's delivery of the fatal pill. Frechette's and Nacotee's obstruction of the truth of their own actions is strong evidence that Frechette was the source of the fatal pill.

Finally, Frechette's continual lying to investigators about his actions evinces his guilt. He wasn't lying to protect the Defendant; he was lying to protect himself as the source of the pill.

With those points made, the Defendant does recognize the context of her crime. She did not deliver the fatal pill but she surely could have. It is by luck or whim perhaps that she did not. Nonetheless, that is the nature of most of Len Bias-type delivery prosecutions. The reality is that Scott Perez, a desperate addict, had several sources of supply on the Reservation. It could have been one of numerous people who were charged if fate had unraveled differently. Also, some of the several hangers-on who helped him smoke the pill that night who certainly were, under the law, a party to the delivery of drug that killed him could have been prosecuted as well. Maybe the Defendant "lucked out" in terms of what was provable against her, but that is the nature of the law and the

---

[2] Kelly Nacotee has pleaded guilty to Misprision of a Felony based on her erasure of 40 to 50 cell phone messages.

law says the guideline for her conduct is 6 to 12 months in jail which is entirely fair and appropriate.

To understand how the Defendant came to be indicted in federal court is consider the profound impact and role that substance abuse has played in the lives of herself and her family members. The Defendant had a lifelong estrangement from her father because of his alcoholism which contributed to his death last year at 51 years of age. (PSR, 70) The Defendant has mixed feelings about her mother. During the presentence interview, she tearfully described the impact of her mother's imprisonment on the family when the Defendant was seven years old. She was often lonely and sad during this time when she lived with her grandmother. (PSR, 77) When her mother was not in prison, she was a good mother until, several years ago, when she began drinking to excess. (PSR 71) Her mother is only forty-four years old and the Defendant believes it's just a matter of time until she follows her father, her father's wife, and her uncle who all died because of their alcoholism.

Not surprisingly, given her family background and the rife nature of substance use on the Reservation, the Defendant was a regular drinker and marijuana user by age 15. Between 2014 and early 2019, the Defendant abused prescription painkillers. In 2016, the Defendant was addicted to pills and selling pills to feed her habit. The Defendant's motivation in committing this crime of delivering a Percocet is understandable and mitigated to a degree. She was never a big time dealer and never was involved in any violence. She was a bit player on the Reservation who, like so many others, had to sell to get money to satisfy her addiction.

6

To her great credit, the Defendant has been living clean for close to a year. She completed her recovery program through Oneida Behavioral Health on February 20, 2020. The Defendant is continuing her after-care by regularly attending AA and NA meetings and by participating in the TANF program through the Tribe.

The Defendant has been able, with newfound sobriety, been able to gain the self-knowledge and confidence she needs to continue to be a good mother to her seven year old daughter and her infant daughter. She knows that she was part of the problem, not part of the solution on the Reservation and is committed to changing. She also considered Scott to be a friend and understands her actions were part of the sad milieu of his life.

Accordingly, the Defendant asks that the court consider these factors in mitigation when determining a sentence sufficient but not greater than necessary to serve the purposes of sentencing.

**The Character of the Defendant and the Needs of the Public**

The Defendant has thrived since her arrest.

According to Clinical Substance Abuse Counselor Dale Rasmussen of Oneida Comprehensive Health Division, the Defendant attended weekly individual AODA treatment sessions from May, 2019, until February 20, 2020. During that ten month span, has exhibited a "sincere commitment toward continuing to live a recovery lifestyle for the betterment of herself and her daughters." (see February 26, 2020, letter attached). Mr. Rasmussen states that he has been impressed with her sense of remorse and views the Defendant as a "sincere, caring, and responsible individual." He asks the court to consider "a minimal amount of physical incarceration" with a lengthy term of supervision

7

as a sentence which would recognize the Defendant's great strides towards recovery and "the contribution that local living influences had upon her past decision-making errors."

In a March 13, 2020, letter from the Menoninee Indian Tribe Community Resource Center, Caseworker Jamie Awonohopay confirms that the Defendant has participated in the TANF program since December, 2020. (see letter attached). Her plan includes AODA treatment, NA and AA meetings, vocational training, driver's license and vehicle registration assistance, first aid and CPR certification, and parenting classes. The Defendant, who is paid a small hourly rate for attending by the Tribe, has exceeded her expected monthly hours of participation. According to Ms. Awonohopay, the Defendant has shown "maturity and growth" and "is a loving and caring mother of her children and is invested in maintaining a healthy lifestyle for her family."

Finally, in an April 8th Release Status Report to the court, United States Probation has recommended that the Defendant be removed from Voice ID and location monitoring because of her compliance "with all aspects of the program."

How best are the needs of the public served in consideration of a sentence for the Defendant? On the one hand, it is undeniable that the Defendant did deal pills on the Reservation and that she, along with many others, is at least part of the tableau surrounding the death of Scott Perez. But what is also undeniable is that she is not the same person she was in September of 2016. She has made tremendous strides toward becoming the mother and member of the community that is necessary for her family and her Tribe to thrive. The message should be that if someone changes and gets clean and lives responsibly and begins adding to society and not taking away, that person should

not go to prison. Opiate addiction has spread wreckage throughout many towns in Wisconsin but it is particularly harsh on the Menominee Indian Reservation. The Defendant can serve as an example to the public that someone can swim from the bottom, away from the wreck, and emerge a new person.

Another sentencing consideration which is mitigating and ties into deterrence and rehabilitation is the delay by the government in charging this case. Scott Perez died on September 12, 2016. No one was indicted in regard to his death until March 26, 2019, a full two and one half years later. Perhaps there were legitimate reasons for the delay, but the delay, itself, is rather extraordinarily long. A sentence of prison, after such a long delay, has little deterrent effect and the goal of rehabilitation, after so long, continues to be satisfied by the Defendant through community resources, not through prison.

When the Defendant looks back on her participation in this crime, closing in on four years ago now, she sees a totally different person than she is today. She is ashamed that she was involved in distributing a drug that has had so many negative consequences on herself, her own family, and her friends, including Scott Perez. She realizes that she was basically wasting her life and is thrilled to be back in the real world with a purpose as a mother and member of the community.

It is reasonable to conclude that the chances of the Defendant recidivating are extremely low. At the age of 29, she has achieved sobriety, stability, and purpose.

In regard to punishment, the Defendant will be forever branded as a felon. Her felony status will impact her employment prospects for the rest of her life as well as be a cross to bear for her and a source of humiliation in her personal life, as well. Also, six months of home confinement and a term of supervision will prove to be a punishment in

its curtailing of liberties. To that end, the Defendant has been on *de facto* supervision since May of 2109 as well as already serving 38 days in jail all which have a sanction/punishment aspect.

### III. CONCLUSION

While fully recognizing the severity of the Defendant's conduct, the Defendant asks the court to consider her lack of a criminal record, the mitigating qualities of the nature of the offense, and positive character traits especially in terms of her sobriety and motherhood, and the sentencing guideline itself as factors in determining a fair sentence.

The Defendant asks the court to consider a sentence of six months of home detention with credit for 38 days and three years of supervised release which is sufficient but not greater than necessary to serve the purposes of sentencing.

Dated this 22nd day of July, 2020.

                                           Respectfully submitted,

                                           *Electronically signed:*

                                           /s/_____
                                           Thomas J. Erickson
                                           Attorney for Defendant

Address and Phone:
316 N. Milwaukee St., Ste. 550
Milwaukee, WI 53202
(414) 271-0678